IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY LEE GERBER, JR.,** | : | **CIVIL NO. 1:12-CV-00818** |
| | : | |
| **Petitioner** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID VARANO,** *et al.***,** | : | |
| | : | |
| **Respondents** | : | |

## M E M O R A N D U M

Petitioner Gary Lee Gerber, Jr. ("Gerber"), who is presently incarcerated at the State Correctional Institution in Coal Township, Pennsylvania, initiated this action by filing a *pro se* petition for writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254. (Doc. 1.) In the petition, Gerber challenges his 2008 convictions and sentence in the Court of Common Pleas of Luzerne County, Pennsylvania ("trial court"). For the reasons that follow, the petition will be denied.

## I.   Background

On December 18, 2006, Gerber was charged with four counts of receiving stolen property, one count of hindering apprehension or prosecution, and one count of criminal conspiracy. (*See* Doc. 29 at 4; Doc. 29-11 at 3.) The government claimed that Gerber had collaborated with his two brothers, Warren and Richard, to steal vehicles and heavy machinery in order to sell them to third parties. (Doc. 29-1 at 10.)

On April 23, 2008, a jury found Gerber guilty of one count of receiving stolen property, a Mitsubishi excavator, and one count of criminal conspiracy.  (Doc. 29-6 at 98–100.)  On June 30, 2008, the trial court sentenced Gerber to fourteen to thirty-six months of imprisonment for receiving stolen property and to a consecutive term of fourteen to thirty-six months for conspiracy.  (Doc. 29-11 at 3.)  At trial, Gerber was represented by Kurt B. Geishauser, Esquire ("trial counsel").  (*Id.*)

After sentencing, Gerber obtained a different attorney, Demetrius W. Fannick, Esquire ("Attorney Fannick"), who initially filed an appeal of his conviction and sentencing order.  (*See* Doc. 29-7.)  However, after reviewing the trial records, Attorney Fannick decided to withdraw the appeal and instead pursue Gerber's ineffective assistance of counsel claims through post-conviction relief.  (*Id.*)  On September 8, 2009, Gerber filed a petition under Pennsylvania's Post-Conviction Relief Act ("PCRA"), in which he claimed the following:

> 1) that trial counsel failed to properly investigate and prepare for trial by hiring a private investigator, as he discussed with Gerber;
> 2) that trial counsel failed to subpoena and call certain key witnesses;
> 3) that trial counsel failed to properly and effectively cross examine witnesses;

2

> 4) that trial counsel failed to subpoena Western Union Records to show the
> lack of any record of an alleged financial exchange between him and his
> brother.

(Doc. 29-9 at 3–5.)  After this filing, there was a series of delays in the PCRA
proceeding, and eventually Attorney Fannick withdrew his representation and was
replaced by John Pike, Esquire.  (Doc. 29-10 at 3.)  During this period, Gerber also
filed a supplemental briefing pro se, which the PCRA court determined to be invalid
because it was not filed through counsel.  (*Id.* at 12.)

On June 12, 2012, after holding an evidentiary hearing, the PCRA court denied
Gerber's petition.  (*See* Doc. 29-11 at 5.)  On June 15, 2012, Gerber filed a notice of
appeal, but this first appeal was ultimately dismissed due to procedural complications
involving two more changes in Gerber's legal representation.  (*See id.* at 5–6.)
Gerber, now represented by Peter John Moses, Esquire ("Attorney Moses"), filed
another appeal on July 6, 2012, in which he raised the following issues:

> 1) whether the lower court erred in denying his PCRA petition where Gerber
> established all factors for an ineffective assistance of counsel claim;
>
> 2) whether the lower court erred in conducting a PCRA hearing when it was
> clear that counsel for both sides were unprepared for the hearing; and
>
> 3) whether the lower court erred in finding that Gerber had been provided a

counseled PCRA petition.

(Doc. 29-12 at 8.)  On June 5, 2013, the Superior Court denied Gerber's appeal.  (Doc. 29-14.)  Gerber did not seek review in the Supreme Court of Pennsylvania.

Gerber filed the instant petition for writ of habeas corpus on May 2, 2012, prior to his initial PCRA hearing, arguing that the repeated delays he experienced rendered Pennsylvania's post-conviction relief procedure effectively unavailable to him.  (*See* Doc. 1-1.)  This court later entered an order staying the habeas proceedings while Gerber exhausted his post-conviction relief in the state courts.  (Doc. 20.)  On July 8, 2013, this court entered an order vacating the stay of litigation.  (Doc. 22.)  The parties have now fully briefed the issues raised in the petition, and the matter is ripe for consideration.

## II.    Standard of Review

### A.    Exhaustion of State Court Remedies

Outside certain narrow exceptions, state prisoners are required to exhaust all available state court remedies for their claims prior to submitting those claims for federal habeas corpus review.  28 U.S.C. § 2254(b); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Lambert v. Blackwell*, 387 F.3d 210,

4

233–34 (3d Cir. 2004) (holding that Pennsylvania state prisoners need not seek discretionary review from the Pennsylvania Supreme Court to exhaust the available state court remedies).  In order to fulfill this exhaustion requirement, federal constitutional claims must be "fairly presented" to the state courts, meaning that the petitioner must provide the state courts with a sufficient factual and legal basis to put them "on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

While a petitioner need not cite "book and verse" of the United States Constitution, *Picard v. Connor*, 404 U.S. 270, 277 (1971), the petitioner's state court pleadings must present "the legal theory and supporting facts asserted in the federal habeas petition in such a manner that the claims raised in the state courts are 'substantially equivalent' to those asserted in the federal court." *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996).  The mere similarity of a claim raised in the state courts with one in a federal habeas petition is insufficient to consider the federal claim exhausted. *Picard*, 404 U.S. at 276.  "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  The petitioner has the burden of establishing that the exhaustion requirement has been met. *Ross v.*

*Petsock*, 868 F.2d 639, 643 (3d Cir. 1999); *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).

### B.  Procedural Default

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will treat the claims as exhausted.  *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *Lines*, 208 F.3d at 160.

A federal habeas court cannot review the merits of defaulted claims unless the petitioner demonstrates that either: (1) there is "cause" for the procedural default and the alleged violation of federal law resulted in "actual prejudice"; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice."  *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750; *Caswell v. Ryan*, 953 F.2d 853, 857, 861-62 (3d Cir. 1992).  To satisfy the first exception, a petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure.  *Coleman*, 501 U.S. at 750.  To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the petitioner's efforts to comply with

6

the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Once "cause" has been successfully demonstrated, a petitioner must then prove "prejudice." "Prejudice" must be something that "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. at 494.

Alternatively, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice. *See Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000). A credible allegation of "actual innocence" constitutes a "miscarriage of justice" that enables a federal court to hear the merits of otherwise procedurally defaulted habeas claims. *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004). The fundamental miscarriage of justice exception, as defined by the United States Supreme Court, is confined to cases of actual innocence as compared to legal innocence, where the petitioner can show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial. *Id*. at 324.

## III.  __Discussion__

In his petition, Gerber sets forth the following claims:

1) that his trial counsel was ineffective for failing to object to:

    a) the Commonwealth's improper bolstering of witnesses,

    b) the Commonwealth's failure to disclose plea deals with its witnesses, and

    c) the Commonwealth's statement about testimonial evidence that never materialized at trial;

2) that his trial counsel was ineffective for failing to object to inconsistent testimony that rendered the evidence against him insufficient to support his conviction;

3) that his trial counsel was ineffective for failing to investigate, interview and call witnesses; and

4) that his trial counsel was ineffective for failing to object to the selectiveness of his prosecution.

(Doc. 1 at 5–9.)  Respondents contend that Gerber failed to exhaust any of these claims in the state courts and that all of his claims should now be dismissed as procedurally defaulted.  (Doc. 29 at 20–26.)  Gerber contends that the procedural default of his claims should be excused because it is the result of the ineffective assistance of his PCRA counsel.  (Doc. 34 at 14.)  This court will first determine whether Gerber in fact failed to exhaust his claims before turning to the issue of whether his failure to exhaust them should be excused.

8

### A.   Whether Gerber's Claims Have Been Exhausted

As discussed above, in order to exhaust his claims, a petitioner must "fairly present" those claims to each level of the state courts, either through direct appeal or through the state's post-conviction relief procedure.  Of the claims in the instant petition, only Gerber's third claim (regarding trial counsel's failure to investigate and call witnesses) was included in his original PCRA petition.  (Doc. 29-9 at 3–5.)  Gerber's first and second claims were included in the brief he submitted to the PCRA court pro se.  (Doc. 1-2 at 2–38.)  However, this pro se brief was filed after counsel had been appointed for him in the PCRA proceeding.  (*See* Doc. No. 20-10 at 12.)  Because Pennsylvania does not allow for "hybrid representation," Gerber's brief did not have any legal effect and thus did not fairly present any claims to the PCRA court.  *See Commonwealth v. Pursell*, 555 Pa. 233, 251 (Pa. 1993) (holding that PCRA petitioners proceeding with counsel may not "confuse and overburden the court" with pro se filings); *see also Commonwealth v. Porter*, 613 Pa. 510, 523–524 (Pa. 2012) ("[A]mendment [of a PCRA petition] is permitted only by direction or leave of the PCRA court.").  Finally, Gerber's fourth claim regarding selective prosecution appears to have been raised for the first time in the instant petition.

Although Gerber presented his third claim in his PCRA petition, he also needed to "fairly present" this claim to the Superior Court in order to exhaust it.  *See, e.g.*,

9

*O'Sullivan*, 526 U.S. at 845.  The closest Gerber came to doing so was in his first

claim on appeal, which argued that the PCRA court "erred in denying [Gerber's]

PCRA petition where [he] established all factors of ineffective assistance of counsel to

support his claim."  (Doc. 29-12 at 8.)  Unfortunately, the brief did not elaborate on

this argument in any detail whatsoever.  The Superior Court disposed of the argument

as follows:

> In his brief, [Gerber] makes a generalized claim that his testimony at the
> PCRA hearing and that of his wife was "clear evidence constituting
> ineffective assistance of counsel."  While he references his trial counsel's
> "actions and inactions," he wholly fails to identify any specific conduct
> by [Gerber's] trial counsel that allegedly constituted deficient
> performance.  Given the paucity of a particularized argument, we would
> be forced to guess as to [Gerber's] claim. . . . Thus, we conclude the
> issues are waived.

(Doc. 29-14 at 7.)  While Gerber's appellate brief did state that it "incorporate[d] by

reference" the arguments set forth in his original PCRA petition, (Doc. 29-12 at 12), it

is well-established in the Pennsylvania courts that a claim must be briefed in greater

detail or else be considered waived.  *See, e.g.*, *Commonwealth v. Bobin*, 916 A.3d

1164, 1168 (Pa. Super. Ct. 2007).  Thus, Gerber did not "fairly present" this claim to

the Superior Court on appeal.  Furthermore, the dismissal of his claim by the Superior

Court constitutes an "adequate and independent state ground" that prevents this court

10

from reviewing the claim through a habeas petition.  *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 109 (1989).[1]

Because Gerber failed to exhaust his claims before the state courts below, and he would be barred from presenting the claims to the state courts now, his claims are procedurally defaulted.  Unless Gerber can show that the procedural default of his claims should be excused, this court must deny his petition for writ of habeas corpus. *See, e.g.*, *Coleman*, 501 U.S. at 750.

### B. Whether the Procedural Default of Gerber's Claims Can Be Excused

Gerber argues that the procedural default of his claims should be excused because of the ineffective assistance of his PCRA counsel.  In *Martinez v. Ryan*, the Supreme Court held that the "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. ___, ___, 132

---

[1] This court notes that, after determining Gerber waived his ineffective assistance of trial counsel claims, the Superior Court went on to discuss why those claims were also meritless. (*See* Doc. 29-14 at 7–12.)  However, the elaboration of an alternative rationale does not change the fact that the Superior Court determined the claim to be waived. *See Harris v. Reed*, 489 U.S. at 264 n.10 ("By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.  Thus, [the doctrine] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.").

S.Ct. 1309, 1315 (2012). In order to establish cause under this standard, the petitioner

must show that

> (a) the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel (b) in the initial-review collateral proceeding (i.e., the first collateral proceeding in which the claim could be heard) and (c) the underlying claim of trial counsel ineffectiveness is "substantial," meaning "the claim has some merit," analogous to the substantiality requirement for a certificate of appealability.

*Cox. v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (quoting *Martinez*, 132 S.Ct. at

1318–20). Respondents do not dispute that the PCRA proceeding in question

qualifies as an "initial-review collateral proceeding" under *Martinez*, but contend that

Gerber has not shown that his PCRA counsel was ineffective and that Gerber's

underlying claims were not substantial. (Doc. 45 at 5–11.)

### i.    Whether Gerber's PCRA Counsel Was Ineffective

To determine whether post-conviction counsel was ineffective, courts must use

the standard first set forth in *Strickland v. Washington* for determining whether trial

counsel was ineffective. 466 U.S. 668 (1984). Under *Strickland*, in order to show

ineffective assistance of counsel, a criminal defendant must show both that counsel's

performance was "deficient" and that this deficient performance prejudiced his

defense. *Id.* at 687. When determining whether counsel's performance was deficient,

courts "must be highly deferential," allowing counsel a "wide latitude . . . in making

12

tactical decisions," and remain conscious of the "distorting effects of hindsight." *Id.*

at 689.  In order to establish the requisite prejudice, it must be shown that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* at 694.  A "reasonable probability" is, for

the purpose of this test, "a probability sufficient to undermine confidence in the

outcome." *Id.*  This court will first examine whether Attorney Moses was ineffective

in failing to properly present Gerber's third claim to the Superior Court before turning

to whether Attorney Pike was ineffective in failing to present Gerber's other claims to

the PCRA court.[2]

Respondents argue that Gerber cannot show that he suffered any prejudice due

to Attorney Moses's failure to properly brief the Superior Court because the Court

indicated that it would have ruled the same even if the claims had been properly

presented.  This court agrees.  In its opinion, the Superior Court explained that

"[a]ssuming [Gerber] intended to raise the propriety of all of the claims addressed at

the PCRA hearing," the Court "would rely on the PCRA court's resolution of the

---

[2] Gerber also argues that Attorney Pike was ineffective in presenting Claim 3 to the PCRA court. (Doc. 46 at 2–7.)  Yet that issue is irrelevant to this inquiry.  *Martinez* only held that post-conviction counsel's ineffectiveness can excuse the *procedural default* of a claim, not the *denial* of a claim. 132 S. Ct. at 1315 ("This opinion . . . recogniz[es] a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").  Even if Pike was ineffective in pursuing Claim 3 before the PCRA court, his performance was not the cause of its procedural default.

issues." (Doc. No. 29-14 at 8.)  The Superior Court then proceeded to quote at length

from the PCRA court's opinion denying Gerber relief on his ineffective assistance of

counsel claims.  (*Id.*)  Because the Superior Court examined the record and

determined (in the alternative) that Gerber's claims lacked merit, there is no

reasonable probability that Gerber's appeal would have had a different result if not for

Attorney Moses's errors.  Thus, Gerber cannot meet the prejudice prong of the

*Strickland* test and the procedural default of Claim 3 cannot be excused.

With respect to Claims 1, 2, and 4, Respondents argue that Attorney Pike's

failure to present those claims in the PCRA petition did not result in any prejudice,

and in the alternative that those claims are meritless and thus not "substantial" under

the *Martinez* test.  (Doc. 45 at 11.)   This court will examine the evidence in the record

for each claim in turn to determine whether Attorney Pike was ineffective.

### a.     Claim 1— Prosecutor's Misleading Statements

Gerber's first claim is that his trial counsel was ineffective for failing to object

to: 1) the prosecution's failure to disclose the plea deals of its chief witnesses, and 2)

the prosecution's bolstering of witness testimony.[3]  (Doc. 1 at 5, Doc. 1-2 at 2–3.)

---

[3] Gerber also lists a third subclaim within this claim: that his trial counsel was ineffective for failing
to object to the prosecution's violations of *Brady v. Maryland*, 373 U.S. 83 (1963).  (Doc. 1-2 at
2–3.)  However, the only alleged *Brady* violations cited by Gerber are that the prosecution failed to
disclose the plea deals of its chief witnesses.  (*Id.*)  Thus, Gerber's first and third subclaims are

Both of these subclaims are premised on certain allegedly deceptive statements made

by the prosecution.  In the opening statement of Gerber's trial, the prosecution

informed the jury that they would be using the testimony of Richard and Warren,

Gerber's brothers who were also involved in the conspiracy.  (Doc. 29-1 at 15–17.)

The prosecution explained their motivation for cooperating with the government as

follows:

> [B]asically Warren and Richard were told the following, and you'll hear
> testimony of this: If you cooperate and you give us information that helps
> us to figure out what happened here, find some of these items, admit your
> wrongdoing, and if you plead guilty some day, stand up like a man and
> admit what you did, then when you stand before the Court, we will tell
> the judge what you did, not only the wrong things that you did, but the
> cooperation that you did.  And that we will leave it up to the judge to
> decide what an appropriate penalty would be for you.

> We're not making any promises.  We're not going to tell you, hold a
> carrot on a stick and say, "here's what you're going to get if you do this."
> That was not done in this case. . . .

> What was done purposely, sort of to keep their feet to the fire, is to make
> it in their best interest to tell the truth and to continue telling the truth.
> And you will hear testimony that both Richard and Warren were charged
> with each and every thing they stole. . . . They didn't get any breaks from
> us.

> The only thing I said is that we would tell the judge what they did, right
> and wrong, and we'd leave it up to the judge to decide what to do.

---

essentially the same claim, and will be analyzed as such.  *See Giglio v. United States*, 405 U.S. 150
(1972) (finding that the prosecution's duty to disclose plea agreements with witnesses stems in part
from *Brady*.)

(Doc. 29-1 at 25–27.)  Gerber argues that this opening statement contradicts statements made during Richard's sentencing hearing.  (Doc. 1-2 at 5–7.)  At the hearing, the prosecution informed the judge that Richard had agreed to cooperate as a witness in exchange for the prosecution informing the judge of his cooperation.  (Doc. 1-8 at 72.)  Gerber argues that this proves the existence of an agreement to give Richard and Warren "breaks," and that by not informing Gerber of this agreement the prosecution committed a *Brady* violation.  (Doc. 1-2 at 5–7.)  Gerber similarly argues that the prosecution contradicted its opening statement when it moved to modify Warren's sentence due to his failure to cooperate at trial.  (Doc. 1-2 at 9.)

The prosecution's failure to disclose a plea agreement made with a witness to secure his or her testimony can violate a criminal defendant's due process rights where the reliability of the witness "may well be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  However, in this case there is no evidence that the prosecution failed to disclose a plea agreement.  While Gerber asserts that the prosecution lied when it stated it wasn't "making any promises," this is simply not the case.  In its opening statement, the prosecution clearly explained the nature of its agreement with Richard and Warren, and that it wasn't making "any promises" about what sentence

16

they would ultimately receive because that decision remained within the sentencing judge's discretion.  (Doc. 29-1 at 16.)  This explanation is consistent with the statements made at Richard's hearing and with the prosecution's motion to modify Warren's sentence due to his failure to cooperate.[4]  Therefore, the prosecution did not withhold potentially exculpatory evidence in violation of *Brady*.

Gerber similarly argues that the his trial attorney should have objected to the prosecution's improper bolstering of Richard and Gerber's testimony during its opening statement.  (Doc. 1-2 at 16–17.)  Gerber argues that the prosecution vouched for the truthfulness of Richard and Warren by making statements about what had been done to ensure that they would testify truthfully.  (*Id.*)  For example, the prosecution stated that, "[w]hat was done purposefully, sort of to keep their feet to the fire, is to make it in their best interest to tell the truth and to continue telling the truth."  (Doc. 29-1 at 16.)  A prosecutor's statements are considered "vouching" when the following two criteria are met: 1) the prosecutor "assure[s] the jury that the testimony of a

---

[4] This court notes that Gerber also claims that the prosecution lied in its opening argument when it stated that "Richard and Warren were charged with each and every thing they stole," because later testimony appears to indicate that there were some crimes they were not charged with.  (Doc. 1-2 at 10.)  However, the prosecution also stated that Warren was charged with "49 counts" and Richard with "26 counts," and Gerber offers no evidence to show that they were not actually charged with that number of crimes.  (*Id.*)  Furthermore, Gerber offers no evidence to indicate that the failure to charge Richard and Warren with additional crimes was the result of a plea agreement, rather than, e.g., the lapsing of the statute of limitations or a lack of evidence.  Thus, Gerber cannot show that he suffered any prejudice from Attorney Pike's failure to include this argument in his PCRA petition.

Government witness is credible," and 2) that assurance is "based on either the prosecutor's personal knowledge, or other information not contianed in the record." *United States v. Vitillo*, 490 F.3d 314, 327 (3d Cir. 2007).  Gerber points to no evidence that establishes either criterion.

As for the first criterion, it is unlikely that the prosecution's statements, taken in context, amounted to an assurance, as the prosecution also repeatedly stated that Richard and Warren's testimony may not be trustworthy.  (*See, e.g.*, Doc. 29-1 at 15 ("They're thieves. . . . I think when you listen to the testimony of thieves, you ought to look and listen very closely to what they tell you.").)  Even if it did amount to an assurance, however, that assurance was based on material that was ultimately brought into the record.  The statements Gerber complains of all concern the measures that the Commonwealth took to secure Richard and Warren's testimony, namely, the promise of informing the sentencing judge of their cooperation.  (*See* Doc. 1-2 at 2–4.)  The details of this agreement was later elicited by the Commonwealth from Richard on direct examination.  (Doc. 29-2 at 2–4.)  As such, any assurance was based on evidence elicited at trial, and therefore did not constitute improper "vouching" by the Commonwealth.[5]

---

[5] Gerber also argues that the Commonwealth improperly vouched for Richard and Warren's testimony in its closing argument.  (Doc. 1-2 at 19.)  However, when read in context, it is clear that the Commonwealth was simply reiterating the testimony of two law enforcement officers who

Finally, Gerber asserts that his trial counsel was ineffective for "not objecting when it came to light that no material guilt testimony outside the scope of Rich[ard] and Warren's testimony was offered." (Doc. 1-2 at 3.)  During its opening statement, the Commonwealth told the jury that it "really [didn't] need Warren and Richard to prove [the] case beyond a reasonable doubt," because "there is other evidence and other sworn testimony from other persons . . . in addition to the testimony of the co-conspirators." (Doc. 29-1 at 18–19.)  The Commonwealth went on to explain that, in addition to the testimony of Richard and Warren, it would be offering: 1) pictures of the Mitsubishi excavator; 2) testimony from the owner of the excavator, 3) testimony from a person who was later found in possession of the excavator, 4) checks written to Gerber in payment for the excavator, 5) testimony from the owner of a lot where Gerber worked on vehicles, 6) pictures of a stolen Mack truck that Richard was driving when he was arrested; 7) testimony from the owner of the stolen Mack truck and milk tanker that Gerber was charged with receiving; 8) testimony from the owner of a stolen Cat excavator that Gerber was charged with receiving, and 9) testimony from two employees of an equipment store where the Cat excavator had been on display before it was stolen. (Doc. 29-1 at 19–24.)  All of this evidence was

explained that they had verified the statements Richard and Warren made to them.  (Doc. 29-6 at 23.)  Because it was simply a comment on the evidence contained in the record, this statement does not constitute vouching.

ultimately produced at trial.  (*See* Docs.  29-1, 29-2, 29-3, 29-4, 29-5, *passim*.)  While

Gerber may disagree with the Commonwealth's contention that this other evidence

would have been sufficient to convict him in the absence of Richard and Warren's

testimony, the statement was not misleading to the jury or otherwise prejudicial

against Gerber.

Thus, each of these sub-claims regarding the Commonwealth's opening

statement are meritless and unsupported by the evidence in the record.  Because this

claims is meritless, it is not "substantial" for the purposes of the *Martinez* test, and

Attorney Pike was not ineffective for failing to raise it in Gerber's PCRA petition.

### b.   Claim II—Inconsistent Testimony

Gerber next claims that his trial attorney was ineffective for failing to object to

inconsistent testimony that rendered the evidence against him insufficient to support

his conviction.  (Docs. 1 at 6, 1-2 at 26–29.)  Gerber refers to conflicting testimony

given by Richard regarding whether Gerber knew that the Mitsubishi Excavator he

provided to Gerber had been stolen.  (Doc. 1-2 at 26–29.)  Gerber does not specifiy

what kind of objection his trial counsel should have made to this testimony.

Furthermore, Gerber's trial counsel could have reasonably believed that it was a better

strategic choice to allow Richard to continue testifying, as the inconsistency in his

testimony was plain to the jury and would naturally have aided Gerber's defense.  (*See*

20

Doc. 29-2 at 16–35.)  Thus, Attorney Pike was not ineffective for not raising this ineffectiveness claim in Gerber's PCRA petition.

Gerber's insistence that this inconsistent testimony rendered the evidence against him insufficient to support a conviction implies that he may also be attempting to assert that his trial counsel was ineffective for not moving for a directed verdict at the end of trial.  In Pennsylvania, a directed verdict is only granted if "the prosecution's evidence, and all inferences arising therefrom, considered in the light most favorable to the prosecution is insufficient to prove beyond a reasonable doubt that the accused is guilty of the crimes charged." *Commonwealth v. Austin*, 631 A.2d 625, 629 (Pa. Super. 1993) (citing *Commonwealth v. Potts*, 460 A.2d 1127 (Pa. Super. 1983)).  The fact that a key witness offered inconsistent testimony does not render the evidence insufficient to support a conviction.  *See, e.g.*, *Commonwealth v. Long*, 624 A.2d 200, 208 (Pa. Super. 1993) ("A mere conflict in testimony does not render evidence insufficient.")  Rather, inconsistent statements made by witnesses are among the many factors that a jury is free to consider in determining which among the competing narratives to believe.  *Id.*  The evidence in the record, even taking into account the inconsistencies cited by Gerber, was not so obviously deficient as to render Gerber's trial attorney ineffective for failing to move for a directed verdict. Because this underlying claim clearly lacks merit, it is not "substantial" under the

21

*Martinez* standard and Attorney Pike was not ineffective for failing to raise it in Gerber's PCRA petition.

### c.    Claim IV—Selective Prosecution

Gerber's final claim is that his trial counsel was ineffective for failing to object to the selectiveness of his prosecution.  (Doc. 1 at 9; Doc 1-9 at 17–67.)  In order to establish selective prosecution, a criminal defendant must show that: 1) "he has been singled out for prosecution even though others similarly situated have not generally been proceeded against," and 2) "he has been selected for prosecution as the result of 'such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.'" *Commonwealth v. Wells*, 657 A.2d 507, 510 (Pa. Super. 1995) (citing *United States v. Henderson*, 584 F. Supp. 1037, 1038 (D.C. Pa. 1984)); *see also United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012).  Gerber argues that there were numerous other individuals who had been implicated by Richard and Warren's statements to law enforcement that were not prosecuted.  (Doc. 1-9 at 20–54.)  Setting aside whether these other individuals were in fact similarly situated, Gerber's claim is flawed because he has not successfully identified an impermissible purpose behind his prosecution.

Gerber offers extensive quotations from the trial transcript in which the prosecution discusses Gerber's unwillingness to cooperate with investigators.  (*Id.* at

22

55–65).  This issue initially arose at trial after Gerber's counsel questioned one of the investigators, Agent Fuller, about whether Gerber offered him information concerning the location of the Mitsubishi excavator while the investigation was still ongoing. (Doc. 29-4 at 20–25.)  On redirect examination, the Commonwealth asked Agent Fuller about the terms of the agreement made between the Commonwealth and Gerber.  (*Id.* at 27–28.)  Gerber's "proffer agreement" provided that: 1) no statement made by him would be directly used against him in a criminal proceeding; 2) the Commonwealth could make "derivative use" of his information for the purpose of conducting criminal investigations; and 3) the Commonwealth could use information from the proffer if Gerber offered contradictory testimony in a legal proceeding.  (*Id.*; *see also* Doc. 1-8 at 2–3.)  When Gerber later took the witness stand, his attorney asked him about certain statements he made to the state investigators, including statements made in the proffer.  (Doc. 29-5 at 25, 28–35.)  On cross-examination, the Commonwealth questioned him about why he ceased cooperating with investigators after offering to take them to the location of one of the machines they were looking for during his meeting with them.  (*Id.* at 46.)  Later in the cross-examination, the commonwealth also read statements Gerber made in the proffer that they argued contradicted his testimony at trial.  (*Id.* at 53–64.)  The Commonwealth again

23

discussed Gerber's proffer of information and subsequent refusal to cooperate with investigators in its closing argument.  (Doc. 29-6 at 452–54.)

Gerber argues that the Commonwealth's references to his proffer agreement and subsequent refusal to offer more information are evidence that his prosecution was in fact motivated by anger at his exercise of his Fifth Amendment right to remain silent. (Doc. 1-9 at 61–65.)  However, the fact that the Commonwealth chose to refer to Gerber's interactions with investigators for impeachment purposes is not, by itself, convincing evidence that those interactions were actually motivating factors behind his prosecution.  Furthermore, as Gerber notes, there were numerous other individuals who were implicated during this investigation that do not appear to have cooperated with investigators and yet were not prosecuted, belying his insistence that he was selected for prosecution on this basis.

Yet even if Gerber could show that this was the motivation behind his prosecution, he cites to no authority holding that this would be an "invidious purpose" constituting selective prosecution.  The Third Circuit has held in analogous circumstances that, where a criminal defendant made an informed decision not to fully cooperate with a state criminal investigation, a later federal indictment did not constitute vindictive prosecution.  *United States v. Oliver*, 787 F.2d 124, 126 (3d Cir. 1986).  Furthermore, other courts have consistently rejected arguments of selective

24

prosecution where the only alleged motivations was the defendant's refusal to cooperate with police. *See United States v. West*, 312 F. Supp. 2D 605, 618 (D. Del. 2004) (*citing United States v. Davis*, 15 F.3d 526, 529–30 (6th Cir. 1994)); *United States v. Martinez*, ___ F. Supp. 3d ___, ___, 2015 WL 2146582 at *3–4 (E.D. Pa. 2015) ("[C]ourts have refused to hold unconstitutional prosecutorial efforts to coerce an offender's cooperation."). Because Gerber's underlying argument for selective prosecution lacks merit, it is not a "substantial" claim under the *Martinez* test and Attorney Pike was not ineffective for failing to raise it.

With respect to each of the claims raised in the instant petition, Gerber has failed to show that his post-conviction counsel rendered ineffective assistance under the *Martinez* standard. Thus, the procedural default of his claims cannot be excused.

## IV.   <u>Conclusion</u>

Because each of Gerber's claims has been procedurally defaulted, and because Gerber has failed to show that the procedural default should be excused, this court is unable to decide the merits of these claims and must deny the instant petition.

An appropriate order will issue.

____s/Sylvia H. Rambo_____<br>
United States District Judge

Dated:  August 20, 2015.